UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MOSES LUGO and CHERYL SEATON,

                Plaintiffs,                      CIVIL CASE NO.:
                                                          1:19-CV-67 [GLS/TWD]

    -against-                                    **COMPLAINT**

THE CITY OF TROY, NEW YORK

                Defendant

## PRELIMINARY STATEMENT

1. Plaintiffs Moses Lugo and Cheryl Seaton, who are individuals with mobility impairments and who use mobility aids, bring this action for declaratory and injunctive relief against Defendant, City of Troy, for its failure to provide accessible sidewalks, curb cuts, pedestrian crossings, and roads in the City of Troy as required by both Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 et seq., and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794.

2. Plaintiffs and other individuals with disabilities who utilize mobility aids are unable to safely navigate the City of Troy due to Defendant's failure to ensure its sidewalks, curb cuts, and pedestrian crosswalks are properly constructed and properly maintained.

## JURISDICTION

3. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 for claims arising under the ADA and Section 504.

4. This Court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and § 2202.

1

## VENUE

5. Venue is proper in this court, pursuant to 28 U.S.C § 1391(b), because Defendant is located within this District and a substantial part of the events giving rise to the claim alleged in this complaint occurred in this District.

## PARTIES

6. Plaintiff Moses Lugo is a resident of Troy, NY.

7. Plaintiff Moses Lugo works as an artist in Troy, NY.

8. Plaintiff Cheryl Seaton is a resident of Troy, NY.

9. Defendant City of Troy, New York ("City of Troy") is a city incorporated under New York State law.

10. Defendant is responsible for building, repairing, and maintaining all pedestrian rights of way along its sidewalks and road crossings, and the enforcement of the obligation of property owners to repair and maintain adjacent sidewalks.

## STATEMENT OF FACTS

11. Plaintiffs are persons with disabilities who use mobility aids.

12. Plaintiff Lugo has a mobility impairment caused by multiple sclerosis, which limits his ability to walk.

13. As a result of Plaintiff Lugo's mobility impairment he uses a power wheelchair.

14. Plaintiff Lugo regularly uses, or attempts to use, the City of Troy's sidewalks, curb cuts, pedestrian crossings, and roads.

15. Plaintiff Seaton has a mobility impairment caused by the loss of a leg, which makes her unable to walk.

16. As a result of Plaintiff Seaton's mobility impairment she uses a power wheelchair.

17. Plaintiff Seaton regularly uses or attempts to use the City of Troy's sidewalks, curb cuts, pedestrian crossings, and roads.

18. Plaintiffs are often unable to use the sidewalks in the City of Troy due to poor maintenance and/or physical barriers to access.

19. Plaintiffs are frequently unable to use the sidewalks in the City of Troy in the winter due to poor snow and ice removal.

20. Plaintiffs often must enter the streets in the City of Troy in their power wheelchairs to travel as pedestrians.

21. Traveling in their power wheelchairs in the streets causes Plaintiffs to become exposed to vehicular traffic and experience greater risk of injury than pedestrians who are able to access the sidewalks.

22. Plaintiffs cannot safely access areas of the City of Troy, including the core downtown area, because of inaccessible sidewalks and crosswalks.

23. The City of Troy provides an extensive network of public sidewalks, curb cuts, pedestrian crossings, and roads in Troy, NY.

24. The provision and maintenance of this extensive network is a critical public program and service that the Defendant provides to residents of, and visitors to, Troy, NY.

**Sidewalk Maintenance**

25. Section 251-4 of the Troy City Code ("City Code") requires property owners to maintain the sidewalk in front of their property in good order and repair.

26. Section 251-10 of the City Code requires property owners to remove all snow and ice by 10:00 AM after the day or night in which snow has fallen.

27. Property owners who fail to timely and properly remove snow and ice may be fined under Section 251-10 of the City Code.

28. Defendant rarely enforces the City Code provisions requiring sidewalk maintenance or snow and ice removal.

29. Defendant's failure to enforce these City Code provisions has resulted in barriers for plaintiffs to using the network of sidewalks, curb cuts, pedestrian crossings, and roads in the City of Troy.

**Curb Cut Construction and Maintenance**

30. A curb cut, also known as a curb ramp, is a concrete ramp in a sidewalk that connects the sidewalk to the pedestrian crossing of a street.

31. The curb cut allows persons who use mobility aids to safely and independently enter or exit pedestrian crossings when traveling on the sidewalk.

32. The slope, landing, and surfacing requirements for curb cuts under the ADA are minimum safety standards that are critical to maintaining a safe and accessible environment.

33. Curb cuts that deviate from such standards can be hazardous for persons with mobility and vision impairments.

34. According to the ADA Accessibility Guidelines, a safe and compliant curb cut must have the features listed below.

    a. The curb cut must be at least 36 inches wide.

    b. The curb cut's running slope can be no steeper than one inch up for every 12 inches across (1:12).

    c. Its cross slope can be no steeper than one inch up for every 48 inches across (1:48).

    d.   There cannot be any other changes in level on the curb cut.

    e.   At the top of the curb cut, there must be a landing with the same width as the curb cut and a minimum length of 36 inches.

    f.   There cannot be any abrupt changes in level between the curb cut and the surface of the street.

    g.   The surface of the street adjacent to the curb cut cannot be steeper than one inch up for every 20 inches across (1:20).

    h.   The two sloped areas on either side of the curb cut, known as "flares," cannot be steeper than one inch up for every 10 inches across (1:10).

35.    Curb cuts must contain detectable warning surfaces that signal to blind and low-vision pedestrians that they are about to enter a street or a crosswalk.

36.    Detectable warning surfaces are small, truncated domes applied to the surface of the curb cut.

37.    On December 16, 2017, Plaintiff Lugo was traveling down the south of the sidewalk of Federal Street in the City of Troy and encountered a large pothole in a crosswalk.

38.    Plaintiff Lugo's wheelchair slid into the pothole.

39.    The pothole snapped the right front wheel of Plaintiff Lugo's power wheelchair.

40.    Plaintiff Lugo was thrown out of the wheelchair despite wearing a seatbelt.

41.    Plaintiff Lugo had to crawl back to his wheelchair and travel in the damaged wheelchair back to his apartment.

42.    Plaintiff Lugo's wheelchair took approximately one month to be repaired.

43.    Plaintiff Lugo was unable to leave his apartment until his wheelchair was repaired.

44. In the 2017-2018 winter, Plaintiff Seaton was traveling along 114th Street near 4th Avenue in the City of Troy.

45. While crossing at 4th Ave, Plaintiff Seaton's wheelchair hit a large gap between the sidewalk and road.

46. The impact cracked the footrest and damaged the battery of Plaintiff Seaton's wheelchair.

47. Plaintiff Seaton's wheelchair was inoperable and she was forced to call her family to assist her.

48. Plaintiff Seaton's wheelchair took approximately two and a half months to replace.

49. Plaintiff Seaton had to use a manual wheelchair while waiting for her new power wheelchair.

50. Without her motorized wheelchair, Plaintiff Seaton could not leave her home unless she arranged for costly vehicle transport to and from her residence.

**Sidewalk Barriers**

51. In addition to hazards presented by missing and non-compliant curb cuts, some sidewalks in the City of Troy are difficult to navigate or impassable for persons with disabilities due to mid-sidewalk barriers.

52. For example, sidewalks in the City of Troy have abrupt changes in level and slope that are hazardous to persons using wheelchairs, walkers, and/or other mobility devices.

53. Sidewalks in the City of Troy contain obstacles such as light poles, benches, and trash cans that can impede the path of travel for wheelchair users.

54. Protruding objects, such as haphazardly placed signage, narrow the path of travel.

55. Protruding objects present navigation barriers to Plaintiffs.

**ADA Self-Evaluation and Transition Plan**

56. A Transition Plan must include a schedule for making accessibility improvements to Defendant's facilities, including a schedule for providing proper curb cuts where pedestrian areas cross streets.

57. The Transition Plan, once prepared, must be made available to the public.

58. Defendant has not completed an ADA Self-Evaluation regarding existing pedestrian right-of-way facilities.

59. Defendant has not completed a Transition Plan for making the City's existing pedestrian rights-of-way accessible.

60. Defendant has not made available to the public an ADA Self-Evaluation.

61. Defendant has not made available to the public a Transition Plan.

62. During a February 2018 meeting with Patrick Madden, the Mayor of the City of Troy, John Salka, the City of Troy ADA Coordinator, and James Caruso, the City of Troy Corporation Counsel, Disability Rights New York ("DRNY") gave Defendant several examples and photographs of non-compliant curb cuts and sidewalks throughout Troy.

63. None of these examples of non-compliant curb cuts and sidewalks have been remedied as of the filing of this Complaint.

64. DRNY has attempted to resolve these issues without litigation, requesting that Defendant make a commitment to provide meaningful access to its sidewalks and pedestrian routes by making improvements and creating a transition plan that would include a proposed budget, areas to be prioritized, and timelines for implementation of the transition plan.

## FIRST CLAIM FOR RELIEF
## VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

65. Plaintiffs re-allege and incorporate herein all previous alleged paragraphs of the Complaint.

66. Title II of the ADA, 42 U.S.C. § 12132, prohibits a public entity from excluding a person with a disability from participating in, or otherwise benefitting from, a program of the public entity, or otherwise discriminating against a person on the basis of disability.

67. A "public entity" includes local governments. 42 U.S.C. § 12131.

68. Defendant is a local government within the meaning of the ADA.

69. A "qualified individual with a disability" means an "individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

70. Plaintiffs are persons with disabilities within the meaning of the ADA in that they have impairments which substantially limit one or more major life activities, such as walking.

71. Title II of the ADA and its implementing regulations requires public entities, including Defendant, to operate each of their programs, services or activities "so that, when viewed in its entirety, it is readily accessible to and useable by individuals with disabilities." 28 C.F.R. § 35.150.

72. Facilities required to be accessible include roads, walks, and passageways. 28 C.F.R. § 35.104.

73. Title II of the ADA requires that when a public entity newly constructs facilities or alters any existing facilities in any manner that affects the usability of such facilities, the

8

newly constructed or altered portions must be made accessible to and usable by individuals with disabilities. 28 C.F.R. § 35.15l (b).

74. Title II's implementing regulations require a public entity to install compliant curb cuts at intersections whenever it newly constructs or alters sidewalks, streets, roads, and/or highways at any time after January 26, 1992. 28 C.F.R. § 35.15l (e).

75. Title II of the ADA requires a public entity to maintain the features of all facilities required to be accessible under the ADA. 28 C.F.R. § 35.133.

76. Moreover, the regulations implementing Title II of the ADA require public entities to prepare and implement a Self-Evaluation and a Transition Plan to evaluate and improve the accessibility of their existing facilities. 28 C.F.R. § 35.105, 28 C.F.R. § 35.150 (d).

77. Public entities that have authority over streets, roads, or walkways, must include in their Transition Plan "a schedule for providing curb cuts or other sloped areas where pedestrian walks cross curbs." 28 C.F.R. § 35.150(d) (1)-(2).

78. Defendant has failed to provide plaintiffs meaningful access to their pedestrian rights-of-way in violation of Title II of the ADA.

79. Defendant has failed to install adequate and compliant curb cuts when newly constructing or altering sidewalks, streets, roads, and/or highways in violation of Title II of the ADA.

80. Defendant has failed and continue to fail to maintain accessible features on pedestrian rights-of-ways.

81. Defendant has failed to fix uneven, and/or crumbling pavement, failed to remove protruding and/or moveable obstructions, failed to ensure a sufficiently wide path of travel, and

failed to correct excessive slopes and cross-slopes, among committing other failures to maintain accessible features of such facilities, in violation of Title II of the ADA.

82. Defendant has violated Title II of the ADA by failing to prepare a Self-Evaluation of their existing pedestrian rights-of-way facilities in Troy, NY.

83. Defendant has violated Title II of the ADA by failing to prepare a Transition Plan to improve the accessibility of such facilities, including a schedule for providing compliant curb cuts.

84. Defendant has failed to enforce snow removal provisions of city code, which has resulted in barriers to the use of the streets and sidewalks of Troy for plaintiffs.

85. As a result of the aforementioned acts, Plaintiffs have been and continue to be injured.

86. Defendant's conduct constitutes an ongoing and continuous violation of Title II of the ADA.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF SECTION 504 OF THE REHABILIATION ACT OF 1973

87. Plaintiffs re-allege and incorporate herein all previous paragraphs of the Complaint.

88. Defendant is a recipient of federal funds and therefore is covered by Section 504 of the Rehabilitation Act of 1973.

89. Section 504 of the Rehabilitation Act provides in pertinent part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance . . ." 29 U.S.C. § 794.

90. Defendant is a recipient of federal financial assistance and has received such federal financial assistance at all times relevant to the claims asserted in this Complaint.

91. A person with a disability is an individual with an impairment which substantially limit one or more major life activities, such as walking. 29 U.S.C. § 705(20)(B).

92. The Plaintiffs are qualified individuals with disabilities within the meaning of Section 504.

93. Defendant and its agents and employees have violated and continue to violate Section 504 and the regulations promulgated thereunder by excluding Plaintiffs from participation in, denying Plaintiffs the benefits of, and subjecting Plaintiffs by reason of their disabilities, to discrimination in the benefits and services of Defendant's pedestrian rights-of-way programs in Troy.

94. Under Section 504, a recipient of federal financial assistance must install compliant curb cuts at intersections whenever it newly constructs or alters sidewalks, streets, roads and/or highways any time after June 3, 1977. See 28 C.F.R. §§ 35.151.

95. Defendant has violated Section 504 by failing to construct compliant curb cuts at intersections throughout Troy, where they have newly constructed or altered sidewalks, streets, roads or highways.

96. Defendant has discriminated and continues to discriminate against Plaintiffs by denying them full access.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

1. A declaration that Defendant's conduct as alleged herein has violated and continues to violate Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act;

2. An order and judgment enjoining Defendant from violating Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act;

3. An order requiring Defendant to develop and implement a remedial plan to cure existing barriers to access in order to provide meaningful access to Troy's pedestrian rights-of-way, including sidewalks, curb cuts, and pedestrian crossings;

4. At a minimum, Plaintiffs request that Defendant be enjoined to take the following actions:

    a. Ensure that pedestrian rights-of-ways are readily accessible and usable by persons with vision and mobility impairments;

    b. Undertake prompt remedial measures to eliminate physical barriers to access for pedestrian rights-of-way in order to make such facilities accessible to Plaintiffs in accordance with federal accessibility standards;

    c. Maintain any existing accessible features of Defendant's pedestrian rights-of-way so that such features provide full usability for persons with vision and mobility impairments;

    d. Ensure that all future new construction and alterations to sidewalks and streets results in the provision of pedestrian rights-of-way that are fully compliant with federal accessibility standards;

   e.  Prepare a complete Self-Evaluation and Transition Plan that address the accessibility of streets and sidewalks in compliance with Title II of the ADA and Section 504;

5. An award of reasonable attorneys' fees and costs; and

6. Such other and further relief as the Court deems just and proper.


Dated:  1/18/2019
Albany, New York

Respectfully submitted,


DISABILITY RIGHTS NEW YORK
Attorneys for Plaintiff

_____/s/_____

BENJAMIN THAPA
Bar Roll No. 107524

_____/s/_____

SIMEON GOLDMAN
Bar Roll No. 505264

725 Broadway, Suite 450
Albany, New York 12207
(518) 432-7861 (telephone)
(518) 427-6561 (fax) (not for service)