**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────────────

**MOSES LUGO and CHERYL SEATON,**

                                        **Plaintiffs,**

        **vs.**                                              **1:19-cv-00067**
                                                             **(MAD/TWD)**

**THE CITY OF TROY, NEW YORK,**
                                        **Defendant.**

───────────────────────────────────────

**APPEARANCES:**                          **OF COUNSEL:**

**DISABILITY RIGHTS NEW YORK**            **ERICA MARIE MOLINA, ESQ.**
279 Troy Rd                               **CHRISTINA ASBEE, ESQ.**
Ste. 9, #236
Rensselaer, New York 12144
Attorneys for Plaintiffs

**NAPIERSKI, VANDENBURGH LAW FIRM**       **THOMAS J. O'CONNOR, ESQ.**
296 Washington Avenue Extension           **DIANE LUFKIN SCHILLING, ESQ.**
Albany, New York 12203
Attorneys for Defendant


**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On January 18, 2019, Plaintiffs Moses Lugo and Cheryl Seaton ("Plaintiffs") commenced this action against Defendant the City of Troy, New York ("Defendant" or "Troy") pursuant to the Americans with Disabilities Act[1] ("ADA") and Section 504 of the Rehabilitation Act of 1973[2] ("Section 504"). *See* Dkt. No. 1. On December 15, 2021, after the close of discovery, Plaintiffs moved for summary judgment. *See* Dkt. No. 72. Defendant opposed Plaintiffs' motion for

─────────────

[1]  *See* 42 U.S.C. §§ 12101-213.

[2]  *See* 29 U.S.C. § 794.

summary judgment and cross-moved to dismiss for lack of subject matter jurisdiction, and, in the alternative, for summary judgment. *See* Dkt. No. 80. In an October 27, 2022 Memorandum-Decision and Order, Senior District Judge Gary L. Sharpe granted Defendant's motion and dismissed Plaintiffs' complaint for lack of subject matter jurisdiction. *See* Dkt. No. 84.

On November 25, 2022, Plaintiffs appealed the dismissal of their complaint. *See* Dkt. No. 86. And, on September 20, 2024, the United States Court of Appeals for the Second Circuit issued a mandate, which vacated the Memorandum-Decision and Order and remanded the case for further proceedings. *See* Dkt. No. 90-1. Specifically, the Second Circuit held that the Court "erred in resolving the question of standing—which was raised at the summary-judgment stage—under the standards applicable to a Rule 12 motion to dismiss on the pleadings." *Id.* at 15.

This case was reassigned to the undersigned for all further proceedings. *See* Dkt. No. 91. Upon remand, the parties filed additional briefing regarding the mandate. *See* Dkt. Nos. 94, 95, 98, 99. After consideration of the Second Circuit's Summary Order, review of the summary judgment briefing, the record, and the supplemental briefing, the Court finds that, for the reasons that follow, Plaintiffs' motion for summary judgment is denied, Defendant's motion for summary judgment is granted in part and denied in part, Defendant's motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is denied, and Plaintiffs' motion for leave to amend the complaint is denied.

## II. BACKGROUND

### A.    The Pleadings

The Court assumes the parties' familiarity with the factual background of this case, as set forth in Judge Sharpe's Memorandum-Decision and Order and the Second Circuit's Opinion. *See* Dkt. Nos. 84, 90. Plaintiffs are residents of Troy who use motorized wheelchairs to navigate

2

throughout Troy due to mobility issues.  *See* Dkt. No. 72-2 at ¶¶ 11, 13, 14, 26, 29.  Plaintiffs

claim that Troy has discriminated against them, in violation of Title II of the ADA and

Section 504, by failing to keep Troy's sidewalks, curb cuts, and crosswalks accessible.  Dkt. No. 1

at ¶ 1.

Plaintiffs allege that they sustained damages in two separate instances while using their

wheelchairs: (1) On December 16, 2017, Mr. Lugo was traveling on Federal Street in Troy "when

his wheelchair slid into a pothole in the pedestrian pathway, snapping off the front right wheel of

the chair and ejecting him onto the ground," Dkt. No. 72-2 at ¶ 20, and (2) during the winter of

2017-2018, Ms. Seaton "hit a large gap in the pedestrian pathway between the sidewalk and the

road while crossing" the street, and the resulting impact cracked her wheelchair's footrest,

damaged its battery, and injured Ms. Seaton's back, *id.* at ¶ 36.  Plaintiffs allege in the complaint

that other, unspecified, locations in Troy are inaccessible to persons with disabilities and

wheelchair users, such as themselves.  *See* Dkt. No. 1 at ¶¶ 51-55.

Through this action, Plaintiffs seek declaratory and injunctive relief against Defendant.

*See id.* at 12-13.  Specifically, Plaintiffs seek "[a] declaration that [Troy]'s conduct . . . has

violated and continues to violate Title II of the [ADA] and Section 504," "[a]n order and

judgment enjoining [Troy] from violating Title II of the [ADA] and Section 504," and "[a]n order

requiring [Troy] to develop and implement a remedial plan to cure existing barriers to access in

order to provide meaningful access to Troy's pedestrian rights-of-way, including sidewalks, curb

cuts, and pedestrian crossings."  *Id.*  "At a minimum" Plaintiffs seek an order enjoining Troy to:

(1) "Ensure that pedestrian rights-of-ways are readily accessible and usable by persons with

vision and mobility impairments;" (2) "Undertake prompt remedial measures to eliminate

physical barriers to access for pedestrian rights-of-way in order to make such facilities accessible

to Plaintiffs in accordance with federal accessibility standards;" (3) "Maintain any existing accessible features of [Troy]'s pedestrian rights-of-way so that such features provide full usability for persons with vision and mobility impairments;" (4) "Ensure that all future new construction and alterations to sidewalks and streets results in the provision of pedestrian rights-of-way that are fully compliant with federal accessibility standards;" and (5) "Prepare a complete Self-Evaluation and Transition Plan that address the accessibility of streets and sidewalks in compliance with . . . the ADA and Section 504." *Id.*

## B.    Summary Judgment Briefing

Plaintiffs moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing that there was no genuine dispute that the summary-judgment record established Plaintiffs' Article III standing because it showed that many pedestrian pathways in Troy remain inaccessible, that Plaintiffs are deterred from using these pathways, and that Plaintiffs have, therefore, experienced an "injury in fact" and a "real and immediate threat of future injury." Dkt. No. 72-1 at 18-25 (quotations omitted).[3] Plaintiffs also contend that they are entitled to summary judgment on the merits of their claims. *See id.* at 26. Defendant argues, in its cross-motion to dismiss for lack of standing under Rule 12(b)(1) or, in the alternative for summary judgment, that Plaintiffs lack standing because the summary-judgment record shows that nearly every specific obstacle that Plaintiffs identified in their complaint and deposition testimony has been remedied and that Mr. Lugo did not demonstrate a threat of future injury because he failed to show that he frequented and wished to return to the sites about which he complained. *See* Dkt. No. 80-19 at 19-31. Defendant admits, however, that at the time its

---

[3] Citations are to the pagination generated by CM/ECF, the Court's electronic filing system.

summary judgment motion was filed, one location identified by Ms. Seaton (the parking lot entrance to the Dinosaur Bar-B-Que Restaurant) "may require injunctive remediation," and, accordingly, requests only partial summary judgment. *Id.* at 31.

**C.    The Summary-Judgment Record**

Plaintiffs both testified at depositions and submitted affidavits in support of their motion for summary judgment. *See* Dkt. Nos. 72-4, 72-5, 74-7, 74-8. The parties also presented percipient and expert witness testimony, along with exhibits, in support of their respective motions. *See generally*, Dkt. Nos. 72, 73, 74, 75, 80.

### 1. Plaintiffs' Testimony

Plaintiffs admit that the summary-judgment record contains testimony from Mr. Lugo that the pothole which caused his incident was patched approximately one week after the incident occurred. *See* Dkt. No. 81-1 at ¶ 3. And Ms. Seaton testified that the gap which caused her incident had been corrected and stated, "now there is a ramp there and everything is clear." *Id.* at ¶ 14 (quotation omitted).[4] Thus, the specific violations enumerated in the complaint were remedied and, in accordance with the directions in the Mandate, *see* Dkt. No. 90-1 at 13, the Court has searched the summary-judgment record to identify other specific violations, identified by Plaintiffs, for which Plaintiffs have adequately demonstrated standing to sue.

Mr. Lugo identified only one other specific location in Troy that he claims is inaccessible. At his deposition, Mr. Lugo testified that, other than the patched pothole that caused his fall, there is a curb ramp near city hall that is "too small" for him to use in his motorized wheelchair. Dkt.

---

[4] Although there is some dispute as to the exact location of Ms. Seaton's accident, *see* Dkt. No. 72-2 at ¶ 36; Dkt. No. 80-1 at ¶ 36; Dkt. No. 80-4 at ¶ 17, the gap in the pedestrian pathway between the sidewalk and the road that caused Ms. Seaton's injury has been corrected, *see* Dkt. No. 81-1 ¶ 14.

No. 74-8 at 20:11-24.  Mr. Lugo mentions "certain places in the area" around Samaritan Hospital that were inaccessible when he ventured there one time, but he cannot "pinpoint them."  *Id.* at 25:10-21.  When asked if there are "other places that [he] specifically had a problem," Mr. Lugo testified that he "really [does not] go too far" and that, if he has to "travel anywhere," he calls a friend to take him around.  *Id.* at 21:8-16.

Ms. Seaton identified four specific accessibility obstacles besides the corrected sidewalk gap that caused her injury.  First, Ms. Seaton testified that "along the restaurant [Dinosaur Bar-B-Que]" in downtown Troy, "there really is no ramp," so, in order to reach the waterfront park, "you have to go through the restaurant parking area."  Dkt. No. 74-7 at 16:22-17:10.[5]  Second, Ms. Seaton identified that when she visits the two food pantries "across the street from each other" on Hoosick, there is no ramp, which forces her to use the street to travel between the food pantries.  *Id.* at 18:15-19:2.[6]  Third, Ms. Seaton testified that there were no curb ramps at any of the four

---

[5]  Plaintiffs "deny" that Ms. Seaton testified as to the name of the restaurant, however, they admit the balance of paragraph 18 of Defendant's statement of material facts and, for their own benefit, accept Mr. Hurtt's estimate for the cost of ramp construction at Dinosaur Bar-B-Que, based upon Ms. Seaton's testimony.  Dkt. No. 81-1 at ¶ 18-19; *see also* Dkt. No. 73-1 at 120 (Plaintiffs' expert's analysis of the "Riverfront Park Area," which includes analysis of the sidewalk and curb ramps around Dionsaur Bar-B-Que, and makes no reference to another restaurant).  Plaintiffs offer no alternative citation or information as to what restaurant Ms. Seaton referred to.  *See id.*  The Court, therefore, deems admitted the location of the restaurant as being the Dinosaur Bar-B-Que.  *See* N.D.N.Y. L.R. 56.1(b) ("The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party *does not specifically controvert*") (emphasis added).

[6]  The parties identify the food pantries as the Unity House Food Pantry, located at 2431 6th Avenue and the Commission on Economic Opportunity Food Pantry, located at 2328 5th Avenue.  *See* Dkt. No. 81-1 at ¶ 24.  Plaintiffs admit the address of the locations cited by Defendant, but "deny" the names of the buildings listed in the same statement of material facts—without citation to an alternate location—because Ms. Seaton did not "name" the buildings in her testimony.  *See id.*  Plaintiffs have admitted the substance of paragraph 24 of Defendant's statement of material facts and fail to specifically controvert it, therefore, paragraph 24 is deemed admitted.  *See id.*; N.D.N.Y. L.R. 56.1(b).

corners at the intersection of 6th Avenue and Hoosick Street, near the bus depot.  *See* Dkt. No. 81-1 at ¶ 20.  And fourth, Ms. Seaton stated that a ramp leading to a boutique near River Street was too steep for her to access safely.  *See* Dkt. No. 74-7 at 38:3-25.[7]

### *2. Expert Witness Analysis*

The parties commissioned expert witnesses to survey the accessibility of sites throughout Troy.  *See* Dkt. Nos. 73-1, 80-4.  The experts reached competing conclusions regarding the sites surveyed.  The parties agree that certain obstacles, including the two obstacles specifically alleged in the complaint, have been corrected to some extent; the parties dispute, however, whether the expert reports show that these sites are now full accessible in compliance with ADA standards. *See* Dkt. No. 81-1 at ¶¶ 5, 8, 14, 19, 21, 24-25, 28-29.

## D.   Second Circuit Opinion

The Second Circuit held that the district court improperly resolved this case, at the summary judgment stage, against Plaintiffs, while "largely ignoring the summary judgment record."  Dkt. No. 90-1 at 13.  The Circuit found that the district court's decision was flawed because it "declined to credit the alleged obstacles in the complaint either because they were too generic or because Plaintiffs' deposition testimony showed that they had been remedied . . . [and] [i]t failed to consider . . . whether other evidence outside the pleadings might suffice to establish Plaintiffs' standing."  *Id.*  On remand, the Second Circuit "anticipate[s]" that this Court will need to determine

> (1) whether Plaintiffs have shown the absence of a genuine dispute as to facts that would establish their standing to pursue relief relating to both the general and specific accessibility obstacles that Plaintiffs identified in the pleadings and the summary-judgment record (or, conversely, whether Troy has shown the same as to

---

[7]  The parties have identified the location as the Marus Blaque boutique at the corner of 3rd Street and Broadway.  *See* Dkt. No. 81-1 at ¶ 28.

facts that would establish Plaintiffs' lack of standing); and (2) if summary judgment is warranted against Plaintiffs on standing, whether Plaintiffs should be granted leave to replead.

*Id.* at 15.

**E.    Supplemental Briefing**

Following remand, the parties submitted supplemental briefing to assist the Court in making determinations on their outstanding summary judgment arguments. *See* Dkt. Nos. 94, 95, 98, 99. Plaintiffs argue that they have alleged facts and propounded sufficient evidence to establish standing and that, should the Court be inclined to grant summary judgment to Defendant, Plaintiffs are entitled to leave to amend the complaint. *See* Dkt. Nos., 94, 98. Defendant contends that the summary-judgment record fails to establish Plaintiffs' standing and that leave to replead should be denied. *See* Dkt. Nos. 95, 99.

### III. DISCUSSION

**A.    Summary Judgment Standard**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the

nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 255 (1986)) (other citations omitted).  Where the non-movant either does not respond to the

motion or fails to dispute the movant's statement of material facts, the court may not rely solely

on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to

evidence in the record support the movant's assertions.  *See Giannullo v. City of N.Y.*, 322 F.3d

139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion

for summary judgment "would derogate the truth-finding functions of the judicial process by

substituting convenience for facts").

"'Assessments of credibility and choices between conflicting versions of the events are

matters for the jury, not for the court on summary judgment.'"  *Jeffreys v. City of N.Y.*, 426 F.3d

549, 553-54 (2d Cir. 2005) (quotation omitted).  "[M]ere speculation and conjecture" is

insufficient to defeat a motion for summary judgment.  *Stern v. Trs. of Columbia Univ.*, 131 F.3d

305, 315 (2d Cir. 1997) (citation omitted).  Moreover, the "mere existence of a scintilla of

evidence in support of the [non-movant's] position will be insufficient; there must be evidence on

which a jury could reasonably find for the [non-movant]."  *Anderson*, 477 U.S. at 252.  "To defeat

summary judgment, therefore, nonmoving parties 'must do more than simply show that there is

some metaphysical doubt as to the material facts,' . . . and they 'may not rely on conclusory

allegations or unsubstantiated speculation.'" *Jeffreys*, 426 F.3d at 554 (quotations omitted).

**B.    The ADA and Section 504**

Congress enacted the ADA to "provide a clear and comprehensive national mandate for

the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).[8]

Title II of the ADA prohibits discrimination against individuals with disabilities in their access of

public services, programs, and activities. *See Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004).

Under a broad construction, maintaining the accessability of pedestrian pathways, such as

sidewalks, curb cuts, and cross walks has been held to fall within the purview of Title II and

Section 504. *See, e.g.*, *Barden v. City of Sacramento*, 292 F.3d 1073, 1076-77 (9th Cir. 2002);

*accord Am. Council of Blind of N.Y., Inc. v. City of N.Y.*, 495 F. Supp. 3d 211, 230-31 (S.D.N.Y.

2020).

## C.    Article III Standing

"Article III confines the federal judicial power to the resolution of 'Cases' and

'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "For there to be a case

or controversy under Article III, the plaintiff must have a personal stake in the case—in other

words, standing." *Id.* (quotation and internal quotation marks omitted).

To establish standing, a plaintiff must show: (1) that he or she has suffered, or will suffer,

an injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a

causal connection between the injury and the defendant's conduct; and (3) the injury must be

likely to be redressed by a favorable decision. *See Field Day, LLC v. County of Suffolk*, 463 F.3d

167, 175 (2d Cir. 2006) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). In the ADA

context, the Second Circuit has held that a plaintiff adequately alleges injury when "(1) the

---

[8] The ADA and the Rehabilitation Act are generally interpreted *in pari materia*, and, as such, the Court analyzes the statutes simultaneously, applying the same standards. *See Lipton v. N.Y. Univ. Coll. of Dentistry*, 865 F. Supp. 2d 403, 408 (S.D.N.Y. 2012), *aff'd*, 507 Fed. Appx. 10 (2d Cir. 2013) ("The ADA was modeled upon the Rehabilitation Act and due to the similarities between the two, claims under both can be analyzed identically unless a difference between the statutes is germane to the case") (citing *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 n.6 (2d Cir. 2002)).

plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendant['s] [services] to plaintiff's home, that plaintiff intended to return to the subject location." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d Cir. 2013).

The third prong articulated in *Kreisler* requires that "the plaintiff plausibly allege[ ] a real and immediate threat of future injury," if "examined under the totality of all relevant facts." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (quotation and internal quotation marks omitted). These "relevant facts" include the "definiteness of the plaintiff's plan to return and frequency of the plaintiff's travel near the [site of the purported violation]." *Id.* (quotation and internal quotation marks omitted). This clarification by the Second Circuit ensures that any "threatened injury must be *certainly impending*," so that the plaintiff does not rely on mere "allegations of *possible* future injury." *Id.* at 74 (quotation and internal quotation marks omitted). "[C]onclusory allegations of intent to return and proximity are not enough—in order to 'satisfy the concrete-harm requirement' and to 'pursue forward-looking, injunctive relief,' [a p]laintiff[] must establish a 'material risk of future harm' that is 'sufficiently imminent and substantial.'" *Id.* at 72 (quoting *TransUnion LLC*, 594 U.S. at 435).

A plaintiff's standing is evaluated at the time the complaint is filed. *See Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993). As the party invoking federal jurisdiction, Plaintiffs bear the burden of establishing standing. *See Field Day*, 463 F.3d 167, 175. To defeat a motion for summary judgment, Plaintiffs "must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan*, 504 U.S. at 561). Each element must be proven with the

"manner and degree of evidence required" at the given stage of litigation. *See Bldg. & Constr. Trades Council v. Downtown Dev., Inc.*, 448 F.3d 138, 145 (2d Cir. 2006). Accordingly, "at the summary judgment stage the plaintiffs need not establish that they in fact have standing, but only that there is a genuine question of material fact as to the standing elements." *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002) (citation omitted); *see Lugo v. City of Troy*, 114 F.4th 80, 88 (2d Cir. 2024) ("[T]o demonstrate his entitlement to summary judgment on [standing], the plaintiff must 'set forth by affidavit or other evidence specific facts' showing that there is no genuine dispute as to facts that attest to his standing . . . . Conversely, to defeat a defendant's motion for summary judgment on the same issue, the plaintiff must produce evidence showing the *presence* of a genuine issue regarding standing that would warrant resolution by trial") (quotation and internal citations omitted).

As discussed, standing requires that the plaintiff have a "personal stake in the case." *TransUnion LLC*, 594 U.S. at 423 (quotation and internal quotation marks omitted). "To demonstrate their personal stake, plaintiffs must be able to sufficiently answer the question: 'What's it to you?'" *Id.* (quoting Antonin Scalia*, The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983)). In the context of the ADA, standing "'often turns on the nature and source of the claim asserted.'" *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).

A plaintiff need not "'await the consummation of threatened injury to obtain preventive relief.'" *Farmer v. Brennan*, 511 U.S. 825, 845 (1994) (quotation omitted). However, allegations of wholesale violations, without allegations of specific and concrete harm are insufficient. *See TransUnion LLC*, 594 U.S. at 425-27. "[I]t is not enough for a plaintiff to allege conditions that

violate the ADA; he must also allege facts sufficient to establish that he has been injured by those violations." *Feltzin v. Triangle Properties #1, LLC*, No. 14-CV-5131, 2016 WL 11599264, *4 (E.D.N.Y. Dec. 15, 2016). With these principles in mind, in the context of the ADA and Section 504, to establish standing a plaintiff must demonstrate that, at the time the complaint was filed, he or she had knowledge of alleged violations that "effect[] their individual disability." *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 174-75 (S.D.N.Y. 2006) (emphasis omitted). "Standing allegations cannot be inferred, but must 'affirmatively appear in the record.'" *Id.* at 174 (quoting *Thompson v. County of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994)). As such, purported violations of the ADA that are known only to a plaintiff's lawyer or expert witnesses are insufficient to establish standing. *See id.* at 173-75 (dismissing associational standing claims because the plaintiffs had standing only as to ADA violations that the individual plaintiff had knowledge of, as put into evidence through the plaintiff's affidavit).

Such knowledge is required because, as discussed, a plaintiff bringing an ADA claim, must allege that he or she suffered an injury that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quotations and internal quotation marks omitted); *see also Calcano*, 36 F.4th at 74 ("Such 'threatened injury must be *certainly impending* to constitute injury in fact, and . . . allegations of *possible* future injury are not sufficient'") (quotation omitted) (emphasis in original). As the Eastern District observed, "[c]ourts both in this Circuit and elsewhere have held that, as a bare minimum, a plaintiff can establish a direct injury sufficient to support standing only if she 'personally encounters the barrier to access' that caused her injury." *Feltzin*, 2016 WL 11599264, at *4 (collecting cases). And, "because . . . [P]laintiffs request forward-looking relief, they must face 'a real and immediate

threat of repeated injury.'"  *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

Here, Plaintiffs have standing only with regard to specific ADA violations made part of the summary-judgment record through Plaintiffs' testimony and affidavits.  There exists no standing for hypothetical injuries that Plaintiffs could suffer as a result of barriers and violations propounded by Plaintiffs' expert witness and lawyers.  *See Access 4 All*, 458 F. Supp. 2d at 173-75; *see also*, Dkt. No. 73-1 (expert report analyzing the ADA compliance of areas throughout Troy, far beyond the scope of the ADA violations identified by Plaintiffs themselves).

Plaintiffs also lack standing to pursue prospective injunctive or retrospective declaratory relief for the two obstacles identified in the complaint,[9] and/or a claim based upon such injuries is moot, because Plaintiffs admit that such obstacles were repaired by Troy.  *See* Dkt. No. 81-1 at ¶¶ 3, 14; Dkt. No. 74-7 at 15:21-25.  Plaintiffs' wholly speculative argument that the conditions that caused their injuries are "expected to recur," Dkt. No. 81 at 19-20, is without merit.  *See Bacon v. Walgreen Co.*, 91 F. Supp. 3d 446, 452 (E.D.N.Y. 2015) (finding that, where the defendants remedied the barriers giving rise the ADA claim, the plaintiffs' argument that they would recur was "speculative at best" given that the "plaintiff offer[ed] no reason whatsoever why [the] defendant would wish to [reimpose the barrier], and . . . offer[ed] no evidence suggesting that [defendant] intend[ed] to" reimpose the barrier); *Browne v. Hynes*, 720 Fed. Appx. 92, 93 (2d Cir. 2018) ("'A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to [demonstrate standing without] . . .  show[ing] a likelihood that he or she will be injured in the future'") (quotation omitted).

---

[9]  Those two obstacles being the pot hole that allegedly caused Mr. Lugo's December 16, 2017, fall and the sidewalk gap that allegedly caused Ms. Setaon's injuries in the winter of 2017-2018.  *See* Dkt. No. 81-1 at ¶¶ 1, 11.

Likewise, Plaintiffs lack standing to pursue city-wide injunctive or declaratory relief related to all of the "pedestrian pathways" throughout the entirety of Troy.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 109 (1983) (conducting remedy-specific standing inquiries).  Plaintiffs' conclusory and unparticularized references, in their affidavits, to "sidewalks, curb cuts, and crosswalks," *see* Dkt. No. 72-4 at ¶¶ 24-27; Dkt. No. 72-5 at ¶¶ 36-45, fail to establish an Article III case or controversy and do not demonstrate a sufficiently imminent and substantial threat of future injury.  *See Calcano*, 36 F.4th at 77-78 (finding that "conclusory claims" cannot establish an injury in fact under the ADA, and, thus, the "[p]laintiffs failed to establish standing").  Moreover, Plaintiffs' argument that they "both suffered injur[ies] in fact, and both are at risk of future injury whenever they attempt to navigate [Troy]'s sidewalks" because "[t]he pleadings and evidence plainly demonstrate that [Troy]'s pedestrian pathways are overwhelmingly noncompliant," Dkt. No. 81 at 19, is without merit.  Even assuming that the hypothetical injuries constitute injuries in fact, the summary-judgment record is devoid of any evidence of a threat of future injury.  *See Harty v. W. Point Realty, Inc.*, 477 F. Supp. 3d 163, 168 (S.D.N.Y. 2020) (noting that, in order to confer standing in an ADA case, the "threat of future injury must be real and immediate, as opposed to merely conjectural or hypothetical") (quotation and internal quotation marks omitted).  For these reasons, Plaintiffs lack standing to pursue city-wide remedies, beyond specific obstacles or sites where Plaintiffs have presented evidence of an injury in fact.

### 1. Mr. Lugo's Standing

As discussed, Mr. Lugo acknowledged at his deposition that the pot hole which caused his December 16, 2017, fall was remedied within a week.  *See* Dkt. No. 81-1 at ¶ 3.  The only other obstacle that Mr. Lugo specifically identified was a defective ramp near Troy City Hall.  *See* Dkt.

No. 74-8 at 20:11-19.  Defendant's expert, Michael D. Hurtt, confirmed that, as of April 2020, the curb ramp at the intersection of Hutton Street and River Street in front of City Hall was obstructed by a traffic signal pole.  *See* Dkt. No. 80-4 at ¶¶ 9-10 & Ex. B.  However, on August 30, 2021, Mr. Hurtt analyzed repairs made to the curb ramp and determined that the ramp was widened to create a path of sixty-inches, purportedly exceeding the ADA requirement of thirty-six inches.  *See id.* at ¶ 11 & Exs. C, D.

Plaintiffs' expert, Steven Kirk Mason, analyzed City Hall, located at 433 River Street, and the "[a]ssociated [a]rea of [a]pproach." Dkt. No. 73-1 at 119-20.[10]  Mr. Mason's analysis of this area far exceeds the obstructed curb ramp that Mr. Lugo testified about.  For example, Mr. Mason states that "[t]he two ramps leading up to the entrance of City Hall each lack a handrail on one side," *id.* at 120, but the record is devoid of any evidence that Mr. Lugo has attempted to access City Hall itself, nor that he intends to in the future.  As such, to the extent Plaintiffs wish to extend Mr. Lugo's purported injuries to areas in which he has not and will not access, they have failed to establish standing.  *See Calcano*, 36 F.4th at 74.

Nevertheless, Mr. Mason's analysis raises a genuine dispute of fact regarding the curb ramp near City Hall.  Mr. Mason notes that "[w]here Hutton Street crosses River Street, the northwest curb ramp's running slope was measured at 14.8%," and must be reconfigured so that the "running slope does not exceed 8.33% at any point," to comply with the ADA.  Dkt. No. 73-1 at 119; *see also* Dkt. No. 81-1 at ¶ 8.  Accordingly, because Plaintiffs have produced evidence

---

[10]  Mr. Mason's analysis of the ADA compliance of the repairs made to the pot hole that caused Mr. Lugo's December 16, 2017, fall and the sidewalk gap that caused Ms. Seaton's injuries in the winter of 2017-2018, *see* Dkt. No. 81-1 at ¶¶ 5, 14-15, is irrelevant.  Plaintiffs admit that these two purported ADA violations were remedied, expressing satisfaction with the current state of the areas in question, *see id.* at ¶¶ 3-4; Dkt. No. 74-7 at 15:21-25, and, thus, any threatened injury is no longer "certainly impending" and cannot "constitute injury in fact," *Calcano*, 36 F.4th at 74 (quotation and internal quotation marks omitted) (emphasis omitted).

that they contend shows that the curb ramp near City Hall has not been properly remediated, Plaintiffs have raised a genuine dispute of fact as to whether Mr. Lugo has standing to seek injunctive relief to remedy such purported defects. *See Lugo*, 114 F.4th at 88 ("[T]o defeat a defendant's motion for summary judgment . . . , the plaintiff must produce evidence showing the presence of a genuine issue regarding standing that would warrant resolution by trial") (citation and alteration omitted).[11]

As for Mr. Lugo's general contention regarding "certain places in the area" around Samaritan Hospital that are inaccessible, he testified that this area is one of the "farthest" places he has traveled from his home in his motorized wheelchair. *See* Dkt. No. 74-8 at 25:10-21. He did not testify at his deposition, nor in the affidavit submitted in support of Plaintiffs' motion for summary judgment, that he intends to navigate the "area" near Samaritan Hospital in the future. *See generally*, *id.*; Dkt. No. 72-4. Accordingly, Mr. Lugo fails to establish standing to pursue injunctive relief to remedy purported ADA violations in that "area," because the risk of harm is not sufficiently imminent and substantial. *See Calcano*, 36 F.4th at 73-75 ("[A]n ADA plaintiff has standing to sue for injunctive relief if 'it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [services] to plaintiff's home, that plaintiff intended to return to the subject location'") (quotation omitted).

### 2. Ms. Seaton's Standing

As discussed, Ms. Seaton identified four specific accessibility obstacles besides the corrected sidewalk gap that caused her injury: (1) the lack of an accessible curb ramp near Dinosaur Bar-B-Que; (2) the lack of curb ramps near the Unity House Food Pantry, located at

---

[11] For the same reasons, Plaintiffs have raised a genuine dispute of fact as to whether the curb ramp near City Hall is ADA compliant, and thus, neither party is entitled to summary judgment on the merits of Mr. Lugo's claim.

2431 6th Avenue and the Commission on Economic Opportunity Food Pantry, located at 2328 5th Avenue; (3) the lack of curb ramps at the four corners at the intersection of 6th Avenue and Hoosick Street, near the bus depot; and (4) a steep ramp leading to the Marcus Blaque boutique.[12] *See supra* Part II.C.1.

The parties present competing expert witness analysis of the four obstacles identified by Ms. Seaton. *See* Dkt. No. 80-4 at ¶¶ 14-20; Dkt. No. 73-2 at 110-121. Accordingly, because the parties raise genuine disputes of fact regarding whether, and to what extent, the obstacles identified by Ms. Seaton have been repaired, summary judgment on the issue of Ms. Seaton's standing cannot be granted. *See Lugo*, 114 F.4th at 88.[13]

Mr. Mason's analysis also goes far beyond the four specific obstacles identified by Ms. Seaton. *See* Dkt. No. 73-2 at 110-121. And, because Ms. Seaton has only identified the four obstacles as places she has suffered an injury in fact, to the extent Plaintiffs wish to extend Ms. Seaton's purported injuries to areas in which she has not and will not access, they have failed to establish standing. *See Calcano*, 36 F.4th at 74.

**D.    Self-Evaluation and Transition Plan Regulations**

---

[12] It is unclear whether Ms. Seaton's testimony is that the entrance to the Marcus Blaque boutique or the sidewalk leading thereto was inaccessible. *See* Dkt. No. 81-1 at ¶ 27. Plaintiffs' claims were brought solely against Troy, pursuant to Title II of the ADA and Section 504. *See, generally*, Dkt. No. 1. The Court notes that, in the event it is revealed that Ms. Seaton's purported injury at the boutique relates only to the entrance to the private business, she cannot seek relief under Title II against Troy because such a claim would be governed by Title III of the ADA. *See, e.g.*, *Kreisler*, 731 F.3d at 186 (describing ADA claims regarding the entrance ramp to a private business, brought pursuant to Title III).

[13] As with Mr. Lugo's claim regarding the City Hall curb ramp, neither party is entitled to summary judgment on the merits of Ms. Seaton's claim because the parties have raised genuine disputes of fact regarding whether the four sites specifically identified by Ms. Seaton are ADA compliant.

Defendant argues that Plaintiffs cannot seek injunctive relief that would require Troy to implement a "Self-Evaluation and Transition Plan," as required by ADA regulations 28 C.F.R. §§ 35.105 and 35.150(d), because there is no private right of action to enforce those regulations. *See* Dkt. No. 80-19 at 32; Dkt. No. 1 at 12-13 (requesting that Defendant be required to "[p]repare a complete Self-Evaluation and Transition Plan that address the accessibility of streets and sidewalks in compliance with Title II of the ADA and Section 504").  Plaintiffs respond, puzzlingly, that they are not asserting a private cause of action for enforcement of the "Transition Plan," but are "request[ing] injunctive relief related to the Transition Plan . . . as a remedy to bring Troy's pedestrian pathways into compliance with the ADA." Dkt. No. 81 at 16 n.6.  Plaintiffs do not argue that there exists a private right of action to enforce the implementation of a "Self-Evaluation and Transition Plan" (the injunctive relief Plaintiffs request in the complaint).  *See id.*; Dkt. No. 1 at 12-13.

Although the Second Circuit has not directly addressed the issue, court in several circuits, including Courts of Appeal have held that the transition plan and self-evaluation regulations promulgated under Title II of the ADA impose burdens on public entities different than, and beyond, those imposed by the ADA itself and, thus, those regulations cannot be enforced through the instrumentality of a private right of action available under Title II.  *See, e.g.*, *Iverson v. City of Boston*, 452 F.3d 94, 101 (1st Cir. 2006); *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 912-14 (6th Cir. 2004).  *But see*, *Chaffin v. Kansas State Fair Bd.*, 348 F.3d 850, 858 (10th Cir. 2003), *overruled on other grounds as recognized by Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 n.4 (10th Cir. 2012)).  However, because the Second Circuit has cited the First Circuit's decision in *Iverson* with approval in finding no private right of action to enforce different ADA regulations, *see Abrahams v. MTA Long Island Bus*, 644 F.3d 110, 120 n.7 (2d Cir.

2011), the Western District of New York has held that it "seems unlikely that the Second Circuit would recognize a private cause of action to enforce" the self-evaluation regulation promulgated by 28 C.F.R. § 35.105, *Montalvo v. Lamy*, 139 F. Supp. 3d 597, 610 (W.D.N.Y. 2015), and the Eastern District of New York has noted that it is "unclear . . . whether [the p]laintiffs have a private right of action to enforce the transition plan regulation, 28 C.F.R. § 35.150(d), or the self-evaluation regulation, 28 C.F.R. § 35.105," *Scharff v. County of Nassau*, No. 10 CV 4208, 2014 WL 2454639, *14 n.7 (E.D.N.Y. June 2, 2014) (citing *Abrahams*, 644 F.3d at 119-20) (other citations omitted).

Relying upon the holdings of other district courts in this Circuit, and because Plaintiffs do not directly oppose Defendant's argument that no private right of action exists to enforce 28 C.F.R. §§ 35.105 and 35.150(d), the Court finds that, to the extent Plaintiffs bring such a claim seeking prospective injunctive relief under the transition plan and self-evaluation regulations, it is dismissed. *See Pedroso v. Syracuse Cmty. Health Ctr.*, No. 5:11-CV-1268, 2014 WL 3956570, *6 (N.D.N.Y. Aug. 13, 2014) ("[W]hen a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit, which has appropriately been characterized as a 'modest' burden") (citations omitted).

## E.    Leave to Amend

Plaintiffs claims have not been dismissed—at least, not in their entirety—for lack of standing at the summary judgment stage, so the Court does not necessarily need to reach the issue of whether Plaintiffs are entitled to leave to amend the complaint. *See* Dkt. No. 90-1 at 15 ("anticipat[ing]" that the Court will address the issue of standing under the summary judgment standards and that, "*if summary judgment is warranted against Plaintiffs on standing*, whether

20

Plaintiffs should be granted leave to replead") (emphasis added). However, because it has been determined that Plaintiffs lack standing to seek relief for ADA violations beyond those they have specifically identified (and have not been repaired), the Court will, in an abundance of caution, analyze whether leave to replead should be granted.

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "the [C]ourt should freely give leave when justice so requires." However, "there is a difference between freedom and license," *CL-Alexanders Laing & Cruickshank v. Goldfeld*, 739 F. Supp. 158, 167 (S.D.N.Y. 1990), and the decision of whether to grant leave to amend remains within the court's discretion, *see John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Generally, courts consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment as grounds for denying the motion to amend. *See Foman*, 371 U.S. at 182. "Perhaps the most important factor listed by the [Supreme] Court and the most frequent reason for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter his pleading." *Lyondell-Citgo Refining, LP v. Petroleos De Venezuela S.A.*, No. 02-CV-795, 2004 WL 2650884, *2 (S.D.N.Y. Nov. 22, 2004) (quotation omitted).

Courts also consider whether discovery has been completed when making a determination regarding undue delay and prejudice. *See Barrows v. Forest Labs., Inc.*, 742 F.2d 54, 58-59 (2d Cir. 1984) (finding no abuse of discretion in district court's determination that leave to amend was prejudicial where discovery was complete and motion to amend was filed two and one-half years after complaint). Indeed, "[w]hen the motion is made after discovery has been completed and a

motion for summary judgment has been filed, leave to amend is particularly disfavored because of the resultant prejudice to defendant." *Goldfeld*, 739 F. Supp. at 167 (citing *Ansam Assoc. Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985)).

This action was commenced nearly six years ago, on January 18, 2019. *See* Dkt. No. 1. The May 1, 2019, Uniform Pre-Trial Scheduling Order set the date for amendment of pleadings as November 29, 2019. *See* Dkt. No. 13. The Court then granted multiple extension of discovery deadlines and the dispositive motion deadline over the course of the following two years. *See* Dkt. No. 66. Plaintiffs filed their motion for summary judgment on December 15, 2021, Dkt. No. 72, and Defendants cross-moved on January 14, 2022, Dkt. No. 80. At no point throughout the lengthy discovery process did Plaintiffs request leave to amend their complaint.[14]

Even now, Plaintiffs have not submitted a proposed amended complaint or otherwise explained in satisfactory detail what their potential amendments would be. *See* Dkt. No. 94. And Plaintiffs fail to show good cause to alter the Court's scheduling order because they do not argue that the allegations that would comprise an amended complaint would be based upon facts that were not available to them at the time summary judgment motions were filed. *See Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) ("A party fails to show good cause when the proposed amendment rests on information 'that the party knew, or should have known, in advance of the deadline'") (quotation omitted). The undue delay on this already protracted litigation, coupled with the prejudice to Defendants if they are forced to contend with now-unknown and potentially claim-altering allegations at this late date, would be significant. *See Am. Med. Ass'n v. United Healthcare Corp.*, No. 00 Civ. 2800, 2006 WL

---

[14]  The Court also notes that Plaintiffs' request to amend the complaint comes only after the Second Circuit's instruction that the Court consider the issue on remand; Plaintiffs did not independently raise the issue before this Court.

3833440, *4 (S.D.N.Y. Dec. 29, 2006) (stating that a motion for leave to amend is often denied when discovery has been completed and post-discovery motions have been submitted); *see also*, *Grand Medford Ests., LLC v. Town of Brookhaven*, No. 24-402-CV, 2024 WL 4440231, *4 (2d Cir. Oct. 8, 2024) (holding district court did not err in denying leave to amend because the plaintiff failed to "attach a proposed amended complaint or otherwise indicate what their potential amendments would be") (quotation and internal quotation marks omitted); *Goldfeld*, 739 F. Supp. at 167 ("[The] plaintiff does not claim that the alleged facts underlying the verbiage in its new complaint were unavailable when the summary judgment motion was briefed.  As discussed above, [the] plaintiff's factual showing on that motion was inadequate, the proof of facts lying in the evidence of them, not in the pleading of them").

For these reasons, at this late stage, following the close of extensive discovery, dispositive motion practice, and an appeal, the Court finds that justice does not require granting leave to amend here.  Plaintiffs' motion to amend is denied.

### IV. CONCLUSION

The Court is sympathetic to Mr. Lugo and Ms. Seaton's struggles and agrees with the sentiment (and legal requirement) that all persons, regardless of their mobility and ability, are entitled to safe access to pedestrian pathways.  Nevertheless, upon careful review of the pleadings, the summary-judgment record, the Second Circuit's directives, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that Plaintiffs' motion for summary judgment (Dkt. No. 72) is **DENIED**; and the Court further

**ORDERS** that Defendant's cross-motion to dismiss for lack of subject matter jurisdiction, and, in the alternative, for summary judgment (Dkt. No. 80) is **GRANTED IN PART** and **DENIED IN PART** as follows:

> **GRANTED** as to summary judgment on Plaintiffs' claims for city-wide declaratory and injunctive relief;
>
> **GRANTED** as to summary judgment on Plaintiffs' claims for relief related to remedied violations;
>
> **GRANTED** as to summary judgment on Plaintiffs' request for injunctive relief pursuant to ADA regulations 28 C.F.R. §§ 35.105 and 35.150(d);
>
> **DENIED** as to summary judgement on Plaintiffs' claims to the extent Plaintiffs have established standing;[15] and
>
> **DENIED** as to dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure; and the Court further

**ORDERS** that Plaintiffs' claim for injunctive relief pursuant to ADA regulations 28 C.F.R. §§ 35.105 and 35.150(d) is dismissed; and the Court further

---

[15] Plaintiffs have established standing, at the summary judgment stage, to pursue their claims for ADA and Section 504 violations at the following locations: (1) the inaccessible curb ramp at the intersection of Hutton Street and River Street, in front of Troy City Hall; (2) the inaccessible curb ramp near Dinosaur Bar-B-Que; (3) the lack of curb ramps near the Unity House Food Pantry, located at 2431 6th Avenue and the Commission on Economic Opportunity Food Pantry, located at 2328 5th Avenue; (4) the lack of curb ramps at the four corners at the intersection of 6th Avenue and Hoosick Street, near the bus depot; and (5) an inaccessible ramp leading to the Marcus Blaque boutique, to the extent such inaccessibility pertains to sidewalks under Troy's control. Plaintiffs' claims survive only to the extent they seek relief for these five alleged violations.

ORDERS that Plaintiffs' claims, to the extent they seek relief beyond the five identified and unremedied sites,[16] are dismissed for lack of standing; and the Court further

ORDERS that Plaintiffs' motion for leave to amend the complaint (Dkt. No. 94) is DENIED; and the Court further

ORDERS that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

IT IS SO ORDERED.

Dated: December 3, 2024
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[16] *See supra*, n.15.

25